UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JESSICA M.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. 2:19-cv-01322-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income (SSI) benefits.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the undersigned agrees that the ALJ erred, and the ALJ's decision is reversed and remanded for further proceedings under sentence four of 42 U.S.C. § 405(g).

I.    <u>ISSUES FOR REVIEW</u>

A. Did the ALJ properly assess the medical opinion evidence?

II.    <u>BACKGROUND</u>

On November 27, 2015, Plaintiff filed an application for supplemental security income (SSI) benefits, alleging a disability onset date of April 7, 2013. AR 196. Plaintiff's application was denied upon initial administrative review and again upon

reconsideration. AR 106, 118-19. A hearing was held before Administrative Law Judge ("ALJ") C. Howard Prinsloo on March 8, 2018. AR 30-60. On August 1, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. AR 10. On June 17, 2019, the Social Security Appeals Council denied review. AR 1.

Plaintiff seeks judicial review of the ALJ's decision. Dkt. 12.

### III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

### IV.   DISCUSSION

In this case, the ALJ found that Plaintiff had the severe, medically determinable impairments of a lumbar disc bulge, a history of atrial septal defect repair, asthma, anxiety disorder, post-traumatic stress disorder, personality disorder, bipolar disorder, and polysubstance dependence. AR 15.

Based on the limitations stemming from these impairments, the ALJ found that Plaintiff could perform a reduced range of medium work. Relying on vocational expert ("VE") testimony, the ALJ found that Plaintiff could not perform her past relevant work, but could perform light, unskilled jobs at step five of the sequential evaluation; therefore the ALJ determined at step five that Plaintiff was not disabled. AR 23-24.

A. <u>Whether the ALJ Properly Evaluated Medical Opinion Evidence</u>

Plaintiff contends that the ALJ erred in evaluating medical opinions from examining psychologist Jared R. Hellings, Psy.D., and state Disability Determination Services (DDS) consultant John Gilbert, Ph.D. Dkt. 12, pp. 4, 10.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). When a treating or examining physician's opinion is contradicted, an ALJ must provide specific and legitimate reasons for rejecting it. *Id.* In either case, substantial evidence must support the ALJ's findings. *Id.* However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*

A non-treating, non-examining source's opinion is generally entitled to less weight than a treating or examining opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

1. Opinion of Dr. Hellings

On September 26, 2016, Dr. Hellings performed a consultative examination of Plaintiff at the request of the Social Security Administration. AR 673. He concluded that Plaintiff met the diagnostic criteria for post-traumatic stress disorder, unspecified

1 neurocognitive disorder, and other specified bipolar and related disorder. AR 677. He
2 went on to state that Plaintiff's anxiety and depressed mood would necessitate
3 significant support and direction in her daily life, and, along with her reports of significant
4 pain, could impair her ability to focus in a functional manner; that Plaintiff's history of
5 trauma and anxiety symptoms interfered with her social functioning; and that her ability
6 to reason and adapt to situations was limited. AR 678. Dr. Hellings performed tests that
7 indicated Plaintiff's immediate memory was below the first percentile and other areas of
8 memory function were in the borderline range. AR 676. Dr. Hellings also recommended
9 a payee because the results of the evaluation demonstrated that Plaintiff did not "have
10 adequate capability to manage her own funds in her best interests"; yet in the medical
11 source statement, Dr. Hellings opined that Plaintiff "does not require a payee to manage
12 her funds." AR 677-678.

13       The ALJ gave "limited weight" to Dr. Hellings's findings, reasoning that (1) they
14 were contradicted by Plaintiff's daily activities and her presentation; (2) the findings of
15 memory issues were in conflict with the findings of intact processing speed and
16 attention; (3) Dr. Hellings considered the effects of Plaintiff's pain, a physical impairment
17 beyond the scope of his examination; and (4) Dr. Hellings's opinion on social functioning
18 was based on subjective reports and not objective tests or personal observations. AR
19 21.

20       The ALJ failed to give clear and convincing reasons supported by substantial
21 evidence for discounting Dr. Hellings's opinion, and this was harmful error.

22       With respect to the ALJ's first reason, inconsistency with a claimant's daily
23 activities may serve as a proper basis for rejecting a medical source's opinion. *Rollins v.*

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 4

*Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Here, the ALJ focused on Dr. Hellings's statement that Plaintiff "often needs significant support and direction in her daily living" and noted that Plaintiff was able to go shopping independently, as well as appropriately dress and groom herself before the medical examination; activities the ALJ noted elsewhere in the decision included playing guitar, working out, doing woodwork, journaling, using Facebook, and raising her child, as well as losing weight through diet and exercise. AR 20, 21. However, there is no evidence cited that would indicate the level of frequency, intensity, or, indeed, success with which Plaintiff engaged in these activities; the weight loss took place over a period of almost three years. AR 20. A claimant need not "'vegetate in a dark room'" in order to be eligible for disability benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (quoting *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981)). Nor is there evidence that Plaintiff could dress and groom herself on an everyday basis to the same degree she did when preparing for a medical appointment.

As to the ALJ's second reason, inconsistent reports within an opinion may serve as a clear and convincing reason to discount the opinion of an examining source. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1995). However, the ALJ may not arbitrarily substitute his or her own judgment for a competent medical opinion. *McBrayer v. Secretary of Health and Human Services*, 712 F.2d 795, 799 (2d Cir. 1983). Here, the ALJ focused on the purported contradiction between Dr. Hellings's findings of intact processing speed and attention and serious deficits in memory. The ALJ also stated that the memory tests were inconsistent with other evidence of record showing Plaintiff's memory to be intact and opined that this suggested "either poor effort

or indicate[s] that Dr. Hellings's findings simply do not reflect her baseline functioning." AR 21. The ALJ makes no indication of how, if at all, the ability to pay attention and to process *new* information conflicted with an inability to *remember* information. The ALJ also does not explain how the record evidence of intact memory—namely, a 2015 self-report in which Plaintiff indicated that she had no *severe* memory loss—rises to the level of affirmatively contradicting Dr. Hellings's findings on the objective tests. The ALJ offers poor effort as a possible explanation without addressing Dr. Hellings's finding indicating no evidence of malingering. AR 675. Overall, the ALJ does not indicate how other evidence, whether inside or outside Dr. Hellings's report, contradicts his assessment of memory deficits.

Regarding the ALJ's third reason—that Dr. Hellings considered the effects of physical symptoms that were beyond the scope of his examination—Dr. Hellings's isolated statement, regarding the probable effect of Plaintiff's self-reported pain symptoms upon her ability to persist at tasks, did not undermine the remaining portions of the analysis that pertained to mental health conditions. AR 21, 678. "Pain merges into and becomes a part of the mental and psychological responses that produce [a claimant's] psychological impairments." *Lester v. Chater*, 81 F.3d 821, 829 (1995). Dr. Hellings did not attempt to evaluate the physical sources of Plaintiff's pain symptoms, and the record does not show any reliance on pain as an independent or influential finding in Dr. Hellings' ultimate conclusions regarding Plaintiff's inability to work due to psychological conditions.

Finally, as to the ALJ's fourth reason, regarding Plaintiff's social functioning, "[m]ental health professionals frequently rely on the combination of their observations

and the patient's reports of symptoms," and "[t]o allow an ALJ to discredit a mental health professional's opinion solely because it is based to a significant degree on a patient's 'subjective allegations' is to allow an end-run around our rules for evaluating medical opinions for the entire category of psychological disorders." *Ferrando v. Commissioner of Social Security Admin.*, 449 Fed. Appx. 610 n.2 (9th Cir. 2011). In addition, the fact that Plaintiff was not irritable or belligerent towards her examining psychologist does not, contrary to the ALJ's reasoning, serve to contradict the finding that she would have difficulties in the wider range of social function that would be expected in a work environment. This was not a clear and convincing reason to discount Dr. Hellings's findings.

    2. Opinion of Dr. Gilbert

On October 10, 2016, Dr. Gilbert, a state DDS consultant, reviewed Plaintiff's records to conduct a mental RFC assessment. Gilbert concluded that Plaintiff was "likely to have occasional interruptions " to her concentration, persistence or pace in a work environment due to her physical symptoms, but that with "normal breaks" she appeared able to maintain concentration, persistence and pace on a regular basis. AR 96. He also noted that Plaintiff "may need [occasional] hygiene reminders," and would benefit from limiting her workplace interactions to the superficial, as well as from assistance in setting and achieving workplace goals. AR 96.

The ALJ gave only "some weight" to Dr. Gilbert's findings, discounting his conclusions on the basis that (1) he offered an opinion outside the scope of his expertise when he mentioned Plaintiff's physical symptoms, (2) his statement regarding occasional interruptions in concentration, persistence or pace was contradicted by his

opinion that Plaintiff could maintain these in a normal workday, and (3) his finding on Plaintiff possibly needing occasional hygiene reminders was contradicted by record evidence showing Plaintiff could care for herself and her child.  AR 21. These were not reasons supported by specific evidence in the medical record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). and the ALJ erred in relying upon them to discount Dr. Gilbert's conclusions.

As with the opinion of Dr. Hellings, Dr. Gilbert's opinion did not analyze Plaintiff's physical condition outside the scope of his psychological examination. Dr. Gilbert's statement discussed pain only to the extent that it could affect Plaintiff's mental functional limitations. He did not venture into an assessment of the physical source of pain or any discussion of how pain would affect Plaintiff's ability to do physical tasks.

With respect to the ALJ's second reason, Dr. Gilbert's purportedly contradictory statement was that Plaintiff was likely to have occasional interruptions to concentration, persistence and pace, but, when given normal breaks, appeared able to maintain concentration, persistence, and pace on a regular basis. AR 95. Here, the probative evidence from Dr. Gilbert's statement, based upon his expertise, is that the Plaintiff would have occasional interruptions to her concentration, pace and persistence. The statement that breaks would help Plaintiff to better maintain these areas of focus is not inconsistent with the finding that occasional interruptions could occur.

Finally, as to the ALJ's third reason, the Plaintiff's ability to present with normal hygiene at an appointment does not contradict a finding that she may need occasional reminders regarding good hygiene on a day-to-day basis. The record reviewed by Dr. Gilbert shows that Plaintiff experienced episodes of decompensation when she

reportedly would fail to attend to basic needs and "let herself go." AR 528. Nor does the fact that Plaintiff provided an unspecified level of care for her child contradict the notion that she would have trouble caring for herself.

## REMAND FOR ADDITIONAL PROCEEDINGS

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). On remand the ALJ must re-evaluate the medical opinion evidence. *See supra* Section IV. This will potentially affect the ALJ's determination of the RFC. Therefore, there are outstanding issues which must be resolved and remand for further proceedings is appropriate.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ erred when she determined Plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further proceedings.

Dated this 5th day of February, 2021.

Theresa L. Fricke
United States Magistrate Judge